UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK J. McCAIG, on behalf of
TAMMY R. McCAIG, deceased,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____/

Case No. 16-11419

Arthur J. Tarnow
United States District Judge

Stephanie Dawkins Davis
United States Magistrate Judge

## REPORT AND RECOMMENDATION
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 11, 12)

## I.   PROCEDURAL HISTORY

### A.   Proceedings in this Court

On April 20, 2016, plaintiff filed the instant suit seeking judicial review of

the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  This

case was referred to the undersigned magistrate judge for all pre-trial purposes on

that same date.  (Dkt. 3).  This matter is before the Court on cross-motions for

summary judgment.  (Dkt. 11, 12).

### B.   Administrative Proceedings

Plaintiff[1] filed the instant claims for a period of disability and supplemental

_____

[1] Plaintiff refers to the deceased claimant Tammy McCaig and/or her husband, Patrick
McCaig, who continues to pursue her claim on her behalf.

security income on January 31, 2013, alleging disability beginning October 13, 2012.  (Tr. 20).[2]  The claim was initially disapproved by the Commissioner on April 30, 2013.  (*Id*.).  Plaintiff requested a hearing on May 20, 2013, but died on July 29, 2014, before a hearing was held.  (*Id*.).  Plaintiff's husband substituted in on her behalf and, on March 11, 2015, he appeared and testified, with the assistance of his attorney, before Administrative Law Judge (ALJ) John J. Rabaut, who considered the case *de novo*.  (Tr. 36-59).  In a decision dated March 26, 2015, the ALJ found that plaintiff was not disabled.  (Tr. 20-30).  Plaintiff requested a review of this decision on or about May 21, 2015.  (Tr. 14-15).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on March 3, 2016.  (Tr. 1-3); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further consideration under 42 U.S.C. § 405(g).

---

[2] The Transcript of Social Security Proceedings is cited to throughout this Report and Recommendation as "Tr.," and found at Docket Entry 7.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was born in 1967 and was 45 years old on the date she filed the application for benefits. (Tr. 28). The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the date of application. (Tr. 22). At step two, the ALJ found that plaintiff's chronic kidney disease, stage III; congestive heart failure; thrombocytopenia; hypertension; headaches; and closed-head injury were severe impairments. (*Id*.). At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. 22-24). The ALJ determined that plaintiff had the following residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a), except she could not climb ladders, ropes, or scaffolds and she could not crawl. The claimant could occasionally perform the following postural activities: climbing ramp/stairs; balancing; stooping; crouching; and kneeling. The claimant needed to avoid concentrated exposure to extreme cold, heat, wetness and humidity, environmental irritants and poorly ventilated areas. The claimant needed to avoid all use of moving machinery and all exposure to unprotected heights. The claimant was restricted to simple, routine and repetitive tasks in a work environment free of fast paced production and involving only simple work related

3

> decisions and few, if any, work place changes. The
> claimant could have only occasional interactions with
> coworkers and the general public.

(Tr. 24). At step four, the ALJ concluded that plaintiff had no past relevant work.

(Tr. 28). At step five, the ALJ denied plaintiff benefits because he concluded

plaintiff could perform a significant number of jobs available in the national

economy. (Tr. 28-29).

 B. Plaintiff's Claims of Error

 Plaintiff claims that the ALJ made several errors requiring remand. First,

plaintiff claims that the ALJ erred in determining her RFC. (Dkt. 11, Pg ID 1405-

07). Specifically, plaintiff claims that the ALJ's RFC finding is not supported by

substantial evidence in the record. She contends that the ALJ engaged in the

prohibited activity of "playing doctor" in his analysis of plaintiff's medical

records. According to plaintiff, in the absence of any medical opinions in the

record, the ALJ resorted to interpreting raw medical data in functional terms -

something the ALJ is not qualified to do. While acknowledging that the act of

determining the RFC is reserved to the Commissioner under 20 C.F.R.

§ 404.1527(d), plaintiff points out that a number of courts have stressed the

importance of medical opinions to support a claimant's RFC. Applying that

rationale to her case, plaintiff insists that his case should be remanded for a

redetermination of the plaintiff's maximum RFC.

Plaintiff's second claim of error relates to the ALJ's failure to obtain a psychological or psychiatric review based on the evidence of mental impairment in her record. (Dkt. 11, Pg ID 1407-08). Plaintiff argues that the ALJ was obligated to have a psychologist or psychiatrist review her file and provide a residual functional capacity assessment.

Next, plaintiff argues that the ALJ erred by conflating the RFC assessment for mental impairment with the review technique used to evaluate claimants under the Listing of Impairments for mental impairments. (Dkt. 11, Pg ID 1408-1410). Plaintiff argues that SSR 96-8p requires the ALJ to make findings regarding the plaintiff's abilities to (1) understand, carry out, and remember simple instructions; (2) respond appropriately to supervision, coworkers, and usual work situations; and (3) deal with changes in a routine work setting. Plaintiff contends the ALJ openly notes that he applied the four factors set forth in 20 C.F.R. §404.1520(a) as the psychiatric review techniques which are to be used to assess an individual's restrictions for the adult mental disorders listings.

Plaintiff argues that the ALJ failed to consider plaintiff's limitations from her mental impairments when he assessed her RFC. (Dkt. 11, Pg ID 1411-12). The claimant was restricted to simple, routine and repetitive tasks in a work environment free of fast paced production and involving only simple work related decisions and few, if any, work place changes. The claimant could have only

occasional interactions with coworkers and the general public." However, nowhere in the decision does the ALJ outline how and what evidence he relied upon in coming to his conclusions. In addition, the ALJ does not address plaintiff's ability to understand, carry out and remember instructions, use judgment in making work-related decisions, respond appropriately to supervision, co-workers and work situations. Therefore, according to plaintiff the ALJ failed to properly assess her RFC as required by SSR 96-8p and SSR 85-15, thus requiring remand.

Finally, plaintiff argues that the ALJ erred by failing to provide a function-by-function assessment of plaintiff's ability to do work related activities. (Dkt. 11, Pg ID 1412-1413). According to plaintiff, Social Security regulations provide that the "RFC as a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." (SSR 96-8p). Further, an RFC involves both exertional and non-exertional factors, with exertional capacity involving seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling. Each function must be considered separately." *Id.* Plaintiff asserts that, in his determination, rather than complying with SSR 96-8p and outlining plaintiff's ability to sit, stand, walk, lift, carry, push, and pull individually, the ALJ merely relies on the State agency medical consultant's review of the plaintiff's records and her opinion that plaintiff was

capable of performing sedentary exertional level work with additional postural and environmental limitations. Nowhere within the ALJ's conclusions does he discuss each function separately with what medical documentation he relied upon. Plaintiff contends that the ALJ did not properly perform a function-by-function assessment as required by SSR 96-8p in determining a Plaintiff's RFC, and as such this matter must be remanded.

    C.    <u>The Commissioner's Motion for Summary Judgment</u>

The Commissioner argues that substantial evidence supports the ALJ's RFC determination. (Dkt. 12, Pg ID 1419-24). According to the Commissioner, the ALJ properly reviewed and cited medical evidence sufficient to justify the RFC, including amongst other things, plaintiff's

- Emergency room records from 2010 and 2011, where Plaintiff received treatment for chest pain, shortness of breath, and gastritis (Tr. 312-341, 350-357);
- Treatment reports from Dr. Atto, dated April 2011, May 2013, June 2013, September 2013, and January 2014 (Tr. 1302, 1304-1307, 1310-1313, 1316-1327);
- Echocardiograms from July, August, and November 2011 (Tr. 464-466, 475-477, 490-492);
- Emergency room record from August 2011, for treatment of myocardial infarction (Tr. 358-360);
- Emergency room record from October 2011, for complaints of chest pain (Tr. 362-366);
- Emergency room record from November 2011, for complaints of abdominal pain (Tr. 377-380);
- Emergency room record from February 2012, for complaints of abdominal pain (Tr. 1005-1025);
- Emergency room record from March 2012, for complaints of abdominal

and chest pain (Tr. 388-401);

- Emergency room record from April 2012, for complaints of shortness of breath and abdominal pain (Tr. 970-1004);
- Hospital records from August 2012, for treatment of abdominal pain (Tr. 402-405, 958-969);
- Hospital records from October 2012, for treatment of abdominal pain (Tr. 929-957);
- Hospital records from October to November 2012, for injuries stemming from an assault (Tr. 725-774, 790-795, 802-860, 867-879);
- Hospital records from November 2012, when family brought Mrs. McCaig to the hospital because they were unable to care for her (Tr. 775-789, 796-801, 861-866);
- State agency psychologist assessment (Tr. 64); and
- Emergency room records from July 2014, for injuries sustained after a fall (Tr. 1291-1300).

The Commissioner relies on the unpublished opinion of *Rudd v. Comm'r of Soc. Sec.*, 531 Fed. Appx. 719 (6th Cir. 2013) and its progeny, in support of the position that the ALJ is not required to base the RFC on a medical opinion. According to the Commissioner, an ALJ does not exceed his expertise in evaluating medical evidence in the record to derive functional limitations even when there is no medical opinion to support his findings. In fact, as contended by the Commissioner, the record need not contain <u>any</u> opinion that the claimant can work at a level listed in 20 C.F.R. § 404.1567 for the ALJ's decision to be supported by substantial evidence. *Prince v. Comm'r of Soc. Sec.*, 2014 WL 4689506 at *20 (E.D. Mich. Sept. 16, 2014)). The Commissioner also points out that it is plaintiff's burden to establish her RFC, and contends that the plaintiff failed to do so here.

Addressing the plaintiff's function-by-function analysis argument, the Commissioner points out that the Sixth Circuit has held that such a detailed analysis is not required. *Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 547-548 (6th Cir. 2002). The ALJ also found that Mrs. McCaig could perform sedentary work, as defined by 20 C.F.R. § 416.967(a), which means that the ALJ determined that she could lift no more than 10 pounds at a time and occasionally lift case files or small tools. 20 C.F.R. § 416.967(a). Social Security Ruling 83-10 further defines the amount of sitting, standing, and walking required for sedentary work, noting that such work involves sitting for about six hours and standing/walking for about 2 hours in an eight-hour day. SSR 83-10, 1983 WL 31251, at *5. Further, plaintiff failed to allege that Mrs. McCaig had any difficulties with pulling and pushing (Pl. Br. at 15-16). In addition, as discussed above, plaintiff did not present any evidence establishing greater limitations in Mrs. McCaig's RFC than the ALJ found, and thus, failed to carry the burden of proof.

The Commission further argues that the ALJ's evaluation of Mrs. McCaig's mental impairments is supported by substantial evidence. (Dkt. 12, Pg ID 1425-30). After citing to evidence of mild or no mental impairment throughout the record, the Commissioner argues that the ALJ properly determined that Mrs. McCaig was restricted to simple, routine, repetitive tasks in a work environment

9

free of fast-paced production that involved only simple work-related decisions and few, if any, work place changes; and she could only have occasional interaction with co-workers and the general public. (Tr. 24). Plaintiff contends, however, that because the ALJ gave limited weight to the assessment from the state agency psychologist, the regulations required him to send the file to another psychologist or psychiatrist to complete the medical portion of the case review.

Pursuant to 20 C.F.R. § 416.903(e), an initial determination by a State agency or the Social Security Administration that you are not disabled (or a Social Security Administration review of a State agency's initial determination), in any case where there is evidence which indicates the existence of a mental impairment, will be made only after every reasonable effort has been made to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment. In the present case, according to the Commissioner the Agency complied with that obligation, as Rose Moten, Ph.D., completed a Psychiatric Review Technique form, in which she concluded that there was insufficient evidence to document the presence of a mental medically determinable impairment. (Tr. 64). Therefore, given that plaintiff's case record was reviewed by a state agency psychologist, the Agency complied with 20 C.F.R § 416.903(e).

The Commissioner also notes that not only did a state agency psychologist

review plaintiff's medical record, and conclude that there was insufficient evidence of a mental medically determinable impairment, (Tr. 64), but the ALJ also reviewed the evidence regarding plaintiff's alleged mental impairments, as discussed above. Moreover, this Court has found that a case does not need to be sent to another psychologist or psychiatrist where the reviewing psychologist or psychiatrist found that the claimant did not have a medically determinable mental impairment. *See Freeman v. Comm'r of Soc. Sec.*, 2015 WL 404332, at *8-9 (E.D. Mich. Jan. 29, 2015).

Plaintiff then maintains that the ALJ's RFC finding is erroneous, as the determination does not contain any work-related limitations, but merely includes the Psychiatric Review Technique findings from the step-three analysis (Pl. Br. at 11-12). At step three, the ALJ concluded that Mrs. McCaig's organic mental disorder caused mild restrictions in her activities of daily living and her concentration, persistence, and pace, and moderate difficulties in social functioning with no episodes of decompensation. (Tr. 23-24). The ALJ then went on to translate those findings into work-related limitations, and determined that Mrs. McCaig was restricted to simple, routine, repetitive tasks in a work environment free of fast-paced production that involved only simple work-related decisions and few, if any, work place changes; and she could only have occasional interaction with co-workers and the general public. (Tr. 24). As such, the ALJ did

not simply reiterate the findings from his § 416.920a analysis, but rather, conducted the more detailed assessment needed to determine the RFC and imposed appropriate work-related limitations. (*See* Tr. 23-24). As discussed above, the ALJ imposed mental work-related limitations in the RFC finding, in that he restricted Mrs. McCaig to simple, routine, repetitive tasks in a work environment free of fast paced production that involved only simple work-related decisions and few, if any, work place changes; and she could only have occasional interaction with coworkers and the general public. (Tr. 24). Given that those limitations are not a reiteration of the paragraph B findings (Tr. 23-24), plaintiff failed to show any error. Moreover, plaintiff has not alleged or presented any evidence that Mrs. McCaig suffered from greater mental limitations than the ALJ found.

Plaintiff further maintains that the ALJ failed to explain what evidence supported his RFC determination. As stated above, though, the ALJ referenced the evidence that supported his RFC determination. Plaintiff adds that the ALJ failed to address Mrs. McCaig's ability to understand, carry out, and remember instructions, use judgment in making work related decisions, and respond appropriately to supervision, co-workers, and work situations. The ALJ's RFC finding that Mrs. McCaig could perform simple, routine, repetitive tasks in a work environment free of fast-paced production that involved only simple work-related

decisions and few, if any, work place changes; and could only have occasional interaction with co-workers and the general public (Tr. 24) addresses all the functional areas that plaintiff referenced and there is no showing of error.

## III.  DISCUSSION

A.  <u>Standard of Review</u>

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant." *Rogers v.*

*Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.*

*Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may ... consider the credibility of a claimant

when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502

F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the

claimant are to be given great weight, particularly since the ALJ is charged with

observing the claimant's demeanor and credibility.") (quotation marks omitted);

*Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence."). "However, the ALJ is not free to make

credibility determinations based solely upon an 'intangible or intuitive notion

about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec.

Rul. 96-7p, 1996 WL 374186, *4.

     If supported by substantial evidence, the Commissioner's findings of fact

are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that

either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status. Title XVI benefits are available to poverty stricken adults and children who become disabled. While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). F. Bloch, Federal Disability Law and Practice § 1.1 (1984). "Disability" means:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.     Analysis and Conclusions

It is the claimant's responsibility to provide evidence establishing her RFC. In fact, the statute provides that, "[a]n individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A). In fashioning the plaintiff's RFC, the Commissioner must base the decision on "all of the relevant medical and other evidence." 20 C.F.R. 416.945. The statute does not require that the Commissioner rely on a physician's RFC assessment, or any other particular piece of evidence. As the Commissioner has noted, the Sixth Circuit has opined, in at least one unpublished decision that, "[t]o require the ALJ to base her RFC finding on a physician's opinion, would, in effect confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." *Rudd v. Comm'r of Soc. Sec.*, 531 Fed. Appx. 719, 728 (6th Cir. 2013). Since the decision in *Rudd*, many decisions both within and outside this district have followed suit. *See e.g.*, *Regan v. Comm'r of Soc. Sec.,* 2015 WL 10567957, (E.D. Mich., Nov. 17, 2015); *Sparrow v. Comm'r of Soc. Sec.,* 2016 WL 1658305, (E.D. Mich., March 26, 2016); *Mosed v. Comm'r of Soc. Sec.,* 2016 WL 1084679, (E.D. Mich., March 21, 2016); *Nassar v. Colvin*, 2016 WL 398248, at *5 (E.D.

Mich., Jan. 27, 2016); and *Branham v. Colvin,* 2015 WL 5719674, (E.D. Mich 2015).

On the other hand, an appreciable number of decisions have credited plaintiff's argument here, namely that an ALJ's failure to consider any medical opinion in formulating a plaintiff's RFC results in the ALJ improperly interpreting raw medical data and substituting his or her lay understanding for that of a trained medical professional. *Gross v. Comm'r. of Soc. Sec.*, ___ F.Supp.3d ___, 2017 WL 1151099, at *4 (E.D. Mich. Mar. 28, 2017). An ALJ should avoid the temptation of playing doctor and making his own medical findings. *Simpson v. Comm'r of Soc. Sec*, 344 Fed. Appx. 181, 194 (6th Cir. 2008). The undersigned recognizes that the final responsibility for deciding the RFC "is reserved to the Commissioner." 20 C.F.R. § 404.1527(d). Nevertheless, many courts have stressed the importance of medical opinions to support a claimant's RFC, and cautioned ALJs against relying on their own expertise in drawing RFC conclusions from raw medical data. *See Isaacs v. Astrue*, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) ("The residual functional capacity opinions of treating physicians, consultative physicians, and medical experts who testify at hearings are crucial to determining a claimant's RFC because '[i]n making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms.'") (quoting *Deskin v. Comm'r Soc. Sec*., 605 F.Supp.2d 908, 912

(N.D. Ohio 2008)); *see also Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the [RFC] determination."); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) ("By independently reviewing and interpreting the laboratory reports, the ALJ impermissibly substituted his own judgment for that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence.").

Particularly, where the evidence does not lend itself to a more or less straight-forward, commonsense conclusion because the medical evidence is so clear and so undisputed that an ALJ would be justified in drawing functional capacity conclusions from the evidence without the assistance of a medical source, courts have found that a physician's assessment should be obtained. *See Wyatt v. Comm'r of Soc. Sec.*, 2013 WL 4483074, *12 (E.D. Mich. Aug. 19, 2013). Indeed, "lay intuitions about medical phenomena are often wrong." *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990). In *Childress v. Berryhill*, 2017 WL 758941, *5 (W.D. Ky. Feb. 27, 2017), the court opined that the ALJ's weighing and interpreting of the plaintiff's MRIs, physical exams, x-rays, EMGs and other evidence in the medical record resulted in an RFC based on a lay person's intuition, and one not supported by substantial evidence.

The Court, therefore, is left with a multitude of consistent, reported and unreported cases holding that it is error for an ALJ to formulate an RFC without the benefit of any opinion evidence, and an unreported, non-binding Sixth Circuit case and its progeny which are somewhat at odds with this conclusion. *See Rudd*, 531 Fed.Appx. at 728 ("[t]o require the ALJ to base her RFC finding on a physician's opinion, would, in effect confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled"). The *Gross* court reconciled these seemingly disparate lines of cases, in part, by finding that where the treating physician's opinion was properly rejected or discounted, it is not a question of requiring the ALJ to base the RFC on the rejected opinion, but rather of whether the ALJ has another basis for assigning one, beyond the ALJ's own interpretation of raw medical data. *Gross*, 2017 WL 1151099, at *4. The court in *Gross* acceded to the reasoning in *Rudd* —20 C.F.R. § 404.1527(d) provides that the final responsibility for deciding issues such as the claimant's residual functional capacity is reserved to the Commissioner, but reconciled that reasoning with the competing line of cases by explaining that they do not require the ALJ to base his or her RFC finding on the opinion of a physician; rather they require the ALJ's RFC assessment to be supported by substantial evidence and not merely on

the ALJ's own medical interpretation of the record.  *Gross*, 2017 WL 1151099, at *4.

The reasoning of *Gross* is compelling in that it  harmonizes *Rudd*'s concerns about supplanting the Commissioner's statutory responsibility with the long-standing admonition against ALJs interpreting raw medical data.  *Id*.; *see also Simpson*, 344 Fed. Appx. at 194; *Isaacs,* 2009 WL 3672060, at *10.  The undersigned finds this reasoning all the more persuasive where the ALJ formulates an RFC when the record is devoid of any opinion evidence, such as was the case here, as opposed to cases where opinion evidence is discounted or rejected, *see e.g.*, *Nassar*, 2016 WL 398248, at *5, or where opinion evidence does not specifically address the plaintiff's RFC, *see e.g.*, *Byberg v. Colvin*, 2016 WL 7654663, at * 3 (E.D. Mich. Dec. 30, 2016).  The latter two scenarios provide some medical opinion evidence from which the ALJ may extrapolate to form her own RFC without interpreting raw medical data, whereas a record without any opinion evidence at all forces the ALJ into the untenable position of playing doctor.

Notwithstanding the appeal of *Gross*' harmonization of the authority reserving the Commissioner's responsibility for developing the RFC with that precluding the ALJ from playing doctor, the undersigned cannot reconcile the *Gross* holding, requiring the ALJ's RFC assessment be supported by substantial

evidence and not merely on the ALJ's own medical interpretation of the record, with yet another Sixth Circuit case, *Brown v. Commissioner of Social Security.* 602 Fed. Appx. 328, 331 (6th Cir. 2015). *Brown* and its progeny hold that ALJs are not required to obtain and consider a physician's medical opinion, even where there otherwise is none, in order to assess a claimant's RFC. *Id*.; *Gerrick v. Comm'r. of Soc. Sec.*, 2016 WL 5369620, at *2 (E.D. Mich. Sept. 26, 2016). *Brown* constrains the undersigned to find that the ALJ did not make a reversible error in assessing plaintiff's RFC without obtaining or considering a physician's medical opinion.[3]

Nevertheless, the ALJ remains obligated to make a logical bridge between the evidence relied on and the conclusion reached. *Gross*, 2017 WL 1151099, at *4. Regardless of whether the ALJ was required to obtain a medical RFC, "...in order to make a decision on this issue, this Court 'may not uphold an ALJ's decision, even if there is enough evidence in the record to support it, if the decision fails to provide an accurate and logical bridge between the evidence and the result.'" *Gross*, 2017 WL 1151099, at *6 (quoting *Pollaccia v. Comm'r of Soc. Sec.*, 2011 WL 281044, at *6 (E.D. Mich. Jan. 6, 2011)); *see also Wilson v. Commissioner of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

---

[3] This discussion refers to plaintiff's physical RFC and medical opinions regarding her physical, rather than her mental impairments. State Agency consultant, Dr. Moten, reviewed plaintiff's records and provided opinion evidence on plaintiff's mental impairments.

While the ALJ does a thorough job of recounting much of the medical evidence accumulated over the course of plaintiff's treatment, in several instances, it is unclear how his RFC conclusions correlate to the medical findings. For instance, the ALJ concludes that plaintiff could occasionally balance, stoop, crouch and kneel, but never crawl. (Tr. 24). Yet, nothing in the medical records discussed by the ALJ suggests any basis for allowing stooping, crouching and kneeling, but prohibiting crawling. (*Id*.) The ALJ references plaintiff's lack of balance and control, and her use of a cane, but that would seem to present as much or more of an obstacle to balancing, stooping, crouching and kneeling as it would to crawling. Additionally, the limitation to climbing stairs even occasionally seems at odds not only with the lack of balance and cane use, but also with the fatigue and shortness of breath caused by plaintiff's congestive heart failure. (Tr. 24). If there is a logical bridge between the medical findings and the RFC, it is not evident. A medical opinion based on a review of plaintiff's treatment records could connect these dots.

Nor does plaintiff's case fit the class of cases in which the evidence shows relatively little physical impairment, thus lending itself easily to a commonsense judgement about her functional capacity. *See Gross*, 2017 WL 1151099, at *5. The record is replete with numerous hospitalizations for plaintiff's very serious, life-threatening medical conditions. She was hospitalized with some regularity

and, following an assault, for nearly two months.  She also underwent numerous

diagnostic tests including radiographic imaging, MRIs, CT scans,

echocardiograms and blood tests.  Consequently, the ALJ's RFC decision is not

supported by substantial evidence in the record, and should be remanded to obtain

a proper medical source opinion to make a redetermination of plaintiff's RFC.  *Id*.

Because this matter is being recommended for remand for further

proceedings, and in the interests of judicial economy, the undersigned will not

consider plaintiff's remaining assignments of error.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's

motion for summary judgment be **DENIED**, and that the findings of the

Commissioner be **REVERSED AND REMANDED** for further proceedings

pursuant to Sentence Four of 42 U.S.C. § 405(g).

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and

Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 25, 2017

s/Stephanie Dawkins Davis
Stephanie Dawkins Davis
United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on August 25, 2017, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

<div style="margin-left:40%">

s/Tammy Hallwood
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov

</div>